UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WAYNE J. ALLARD,               )
   Plaintiff.                  )
                             )
           v.                    )   C.A. No. 10-10143-MLW
                             )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION        )
   Defendant.                  )

MEMORANDUM AND ORDER

WOLF, D.J.                                              August 24, 2011

I. INTRODUCTION

Plaintiff Wayne J. Allard has filed a motion pursuant to 42
U.S.C. §405(g) to reverse or remand the final decision of defendant
Michael J. Astrue, the Commissioner of the Social Security
Administration, denying his application for Social Security
Disability Insurance Benefits. Defendant has filed a motion to
affirm the decision. For the reasons described below, plaintiff's
motion to reverse or remand is being denied, and defendant's motion
to affirm the decision is being allowed.

II. FACTS AND PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability
Insurance Benefits on March 20, 2007. See Administrative Record
("AR") at 7. He alleges a disability arising from neck and back
injuries caused by a September 23, 2004 automobile accident. See
id. at 10. Defendant denied plaintiff's application on June 20,
2007, and, after reconsideration, again on August 26, 2008. See id.
at 64-66, 75-77.

An administrative hearing was held before Administrative Law Judge ("ALJ") Sean Teehan on July 17, 2009. See id. at 7. On September 2, 2009, the ALJ denied plaintiff's application, finding that he did not meet the requirements of the five-step sequential evaluation process for determining whether an individual is disabled and, therefore, was not disabled. See id. at 9-12. The sequential evaluation was performed pursuant to 20 C.F.R. §404.1520. See id. at 8. Steps one through five address whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe; (3) the claimant's impairment or combination of impairments meets or medically equals the criteria listed in 20 C.F.R. §404 Subpart P, Appendix 1; (4) the claimant's residual functional capacity allows him or her to perform the requirements of his or her past relevant work; and (5) the claimant is able to perform any other work. See id. at 8-9.

The ALJ found that plaintiff satisfied steps one and two because he was not engaged in substantial gainful activity and suffered from the following severe impairments: C4-5 disc protrusion, cervical degenerative disc disease with no significant foraminal stenosis, cervical spondylosis, and mild supraspinatus and infraspinatus tendinosis. See id. at 9. At step three, the ALJ determined that these impairments did not meet or medically equal any impairments listed in 20 C.F.R. §404, Subpart P, Appendix 1,

2

and, therefore, did not automatically render plaintiff disabled. See id. at 10. At step four, the ALJ found that plaintiff's residual functional capacity permitted him to perform his past relevant work as a stock clerk in a thrift store.[1] See id. at 12. Accordingly, the ALJ did not reach step five, and plaintiff was determined to be not disabled. See id. at 12-13.

The ALJ's decision became final when it was affirmed by the Decision Review Board on November 29, 2009. See id. at 1-3. Plaintiff timely filed the instant petition on January 29, 2010, contending that the ALJ erred by failing to give proper weight to the opinions of his treating physician and a vocational expert. On February 24, 2011, defendant filed a motion to affirm the ALJ's decision.

III. DISCUSSION

"Judicial review of Social Security administrative decisions is authorized by 42 U.S.C. §405(g)." Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court's review is "limited to determining

---

[1] As defendant acknowledges, the ALJ's step-four finding is in tension with his step-one finding. At step four, the ALJ found that plaintiff could perform his past relevant work - namely, a stock clerk position plaintiff had held from April, 2006, until September, 2006. See AR at 9, 25, 133. However, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 23, 2004. See id. at 9. This tension does not require reversal or remand, however, because it represents, at most, harmless error insofar as it indicates only that the ALJ had alternate grounds for denying plaintiff's application. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000).

whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (citing <u>Manso-Pizarro v. Sec'y of Health & Humam Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1996)).

A reviewing court must affirm the ALJ's decision if it is supported by "substantial evidence" in the record. 42 U.S.C. §405(g); <u>see also</u> <u>Rodriquez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The ALJ is entitled to weigh the evidence and to resolve conflicts in the medical evidence and testimony. <u>See</u> <u>Rodriquez Pagan</u>, 819 F.2d at 3. The ALJ may also consider questions of demeanor and credibility, and his or her conclusions regarding demeanor and credibility are entitled to deference by a reviewing court. <u>See</u> <u>Crespo v. Sec'y of Health & Human Servs.</u>, 831 F.2d 1, 7 (1st Cir. 1987).

A.  <u>The Opinion of Plaintiff's Physician</u>

Plaintiff contends that the ALJ erred by not giving controlling weight to the opinion of his treating physician, Dr. Roger Kinnard, regarding plaintiff's residual functional capacity. This contention is mistaken.

An ALJ must evaluate every medical opinion he or she receives,

4

"[r]egardless of its source," unless a treating physician's opinion is given controlling weight. 20 C.F.R. §416.927(d). "[T]reating physicians' opinions are ordinarily accorded deference in Social Security disability proceedings." <u>Richards v. Hewlett-Packard Corp.</u>, 592 F.3d 232, 240 n.9 (1st Cir. 2010). This is because treating physicians are best situated to offer "a detailed, longitudinal picture . . . and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §416.927(d)(2). However, for a treating physician's opinion to be given controlling weight, it must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and must be consistent with other substantial evidence in the record. <u>See</u> 20 C.F.R. §416.927(d)(2); <u>Silva-Valentin v. Comm'r of Soc. Sec.</u>, 74 F. App'x 73, 74 (1st Cir. 2003) (unpublished); <u>Haidas v. Astrue</u>, C.A. No. 08-11274-MLW, 2010 WL 1408618, at *2 (D. Mass. Mar. 31, 2010).

In this case, the ALJ did not err by declining to give to Dr. Kinnard's opinion the controlling weight ordinarily due to the opinion of a treating physician. On May 27, 2009, having reviewed plaintiff's medical and surgical records, Dr. Kinnard completed a physical residual functional capacity assessment of plaintiff. <u>See</u> AR at 336. Dr. Kinnard concluded that plaintiff could frequently

lift ten pounds, could stand or walk for fewer than two hours in the course of an eight-hour workday, could sit for fewer than six hours in the course of an eight-hour workday, and was limited in using his arms to push or pull. <u>See id.</u> Dr. Kinnard also concluded that plaintiff could never climb, stoop, crouch, or crawl, could only occasionally balance or kneel, and had limited reaching ability. <u>See id.</u> at 337-38. Dr. Kinnard summarized his conclusions by expressing the opinion that plaintiff required "sedentary conditions." <u>Id.</u> at 337.

However, as the ALJ noted, although Dr. Kinnard had treated plaintiff for several months following the September 23, 2004 automobile accident that caused plaintiff's impairments, he was no longer plaintiff's treating physician when he offered his May 27, 2009 opinion regarding plaintiff's residual functional capacity. <u>See</u> AR at 11. Indeed, the last date on which Dr. Kinnard actually examined or treated plaintiff appears to have been about January 5, 2005. <u>See id.</u> at 194-95. A treating physician is one who has an "<u>ongoing</u> treatment relationship" with a patient. 20 C.F.R. §§404.1502 (emphasis added). To give controlling weight to Dr. Kinnard's May 27, 2009 opinion under these circumstances would defeat the purpose of the treating physician rule codified in 20 C.F.R. §416.927(d).

When, as here, a treating physician's opinion is not controlling, an ALJ must look to the following factors to determine

6

the weight properly given to the opinion: (1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the relevant evidence in support of the medical opinion; 4) the consistency of the medical opinions reflected in the record as a whole; and 5) whether the physician is a specialist in the area in which he or she renders his or her opinions. See 20 C.F.R. §416.927(d). However, the First Circuit has implicitly held that it is not necessary for an ALJ to expressly address each of these factors. See Morales v. Comm'r of Soc. Sec., 2 F. App'x 34, 36 (1st Cir. 2001) (unpublished); Ramos v. Barnhart, 119 F. App'x 295, 296 (1st Cir. 2005) (unpublished); see also Haidas, 2010 WL 1408618, at *3; Dietz v. Astrue, C.A. No. 08-30123-KPN, 2009 WL 1532348, at *7 (D. Mass. May 29, 2009). Moreover, "[t]he law in [the First Circuit] does not require ALJs to give greater weight to the opinions of treating physicians" than to the opinions of non-treating physicians. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982). An ALJ is entitled to choose between conflicting evidence. See Vazquez-Rosario v. Barnhart, 149 F. App'x 8, 10 (1st Cir. 2005) (unpublished); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987); Burgos Lopez v. Sec'y of Health & Human Servs., 747 F.2d 37, 41 (1st Cir. 1984).

In this case, having declined to give to Dr. Kinnard's opinion

controlling weight, the ALJ also did not err by not giving to it "much weight" at all. AR at 11. As the ALJ noted, Dr. Kinnard's May 27, 2009 opinion is inconsistent with other medical evidence in the record, including Dr. Kinnard's own observations and recommendations made while still treating plaintiff immediately following his September 23, 2004 automobile accident. See id. at 11. For example, on October 26, 2004, Dr. Kinnard observed that, while plaintiff's impairments temporarily precluded him from resuming his work in a hotel laundry, plaintiff was only partially disabled and could perform light work. See id. at 190-91. Dr. Kinnard reiterated this observation on January 5, 2005. See id. at 195.

Of course, as plaintiff points out, the degenerative nature of his impairments could explain any inconsistencies between Dr. Kinnard's earlier observations and his May 27, 2009 opinion. However, the other medical evidence in the record reflects few signs of actual degeneration and, indeed, much of the other evidence in the record contradicts Dr. Kinnard's May 27, 2009 opinion.

A September 25, 2004 physical examination conducted by Dr. Colleen M. Collins revealed that plaintiff had full range of motion of his left shoulder, back, and neck, without spinal or paraspinal tenderness, see id. at 197, as did a follow-up examination conducted by Dr. John Vanderpool on October 20, 2004, see id. at

202-03. After reviewing the results of an MRI and reexamining plaintiff on November 12, 2004, Dr. Vanderpool cautioned that heavy lifting "may exacerbate [plaintiff's] discomfort" but that light work was possible. Id. at 205. On December 15, 2004, Dr. Vanderpool "anticipat[ed] that there should be some improvement over the course of the next month to month and a half," and "expect[ed] an eventual full recovery . . . without any expectation of significant limitation or loss of function." Id. at 207. Throughout 2005 and 2006, plaintiff continued to see Dr. Vanderpool periodically, complaining of occasionally severe neck and shoulder pain and receiving from Dr. Vanderpool notes temporarily excusing him from work. See id. at 229-243, 282. However, it does not appear that Dr. Vanderpool ever revised his opinion regarding plaintiff's overall fitness for light work.

On June 5, 2006, plaintiff was examined by Dr. Robert A DiTullio, who found plaintiff to have C4 to T5 tenderness and left shoulder tenderness. See id. at 221. Dr. DiTullio also reported that plaintiff had a weak grip in his left (dominant) hand and that plaintiff's left shoulder showed signs of atrophy, but noted that sensory testing of plaintiff's upper and lower extremities was normal and that plaintiff generally had good range of motion. See id. at 221-22. Dr. DiTullio offered a "[g]uarded" prognosis and diagnosed plaintiff with (1) a traumatic C4-5 herniated disc, with continuing radiculopathy into the left upper extremity; (2)

9

supraspinatus and infraspinatus tendinosis; and (3) a lumbar strain. Id. at 222. He described plaintiff as "totally disabled" but, without elaboration, cited an "18% impairment of the whole person as her [sic] permanent partial disability." Id. at 222-23.

On March 2, 2007, plaintiff was examined by Dr. Richard Ozuna, an orthopaedist who reported that plaintiff's "motor and sensory exams were normal" and that plaintiff's reflexes were normal, as well. Id. at 264. Dr. Ozuna described plaintiff's symptoms as primarily axial and myofascial, noting that he observed no signs of radiculopathy or myelopathy. See id. at 265. On March 23, 2007, Dr. Ozuna noted that an MRI of plaintiff's cervical spine revealed mild disc protrusion at C4-5 with mild impingement of the spinal cord, mild to moderate central left-side disc protrusion at C5-6, and a mild disc bulge at C6-7. See id. at 265, 282. On the recommendation of Dr. Ozuna and his colleague, Dr. James Lee, plaintiff received two courses of epidural steroid injections but apparently experienced no relief from his pain. See id. at 266-68.

On May 24, 2007, having performed a consultative physical examination, Dr. Hubert Caplan concluded that plaintiff had full range of motion in his neck "with some complaint of high left trapezius discomfort and on right lateral flexion there is slight tenderness in the left trapezius parasternally." Id. at 262. Dr. Caplan also concluded that plaintiff exhibited no signs of root compression or radiculopathy. See id. He expressed the opinions

that plaintiff was not "totally disabled for all gainful employment" and that plaintiff could perform sedentary or light work, if certain precautions were taken to avoid straining his neck. Id. at 263.

Dr. Caplan's opinions are largely consistent with the opinion of Dr. Barbard Trockman, who conducted a physical residual functional capacity assessment of plaintiff on June 18, 2007. Dr. Trockman found that plaintiff could occasionally lift twenty pounds, could frequently lift ten pounds, was unlimited in his pushing and pulling abilities, and could stand, walk, or sit for six hours over the course of an eight-hour workday, although Dr. Trockman also found that plaintiff was limited in reaching overhead and could only occasionally balance. See id. at 270-72. In making these findings, Dr. Trockman referred to plaintiff's near-normal physical examinations and MRI results, concluding that plaintiff's complaints of pain were only partially credible. See id. at 271. In contrast, Dr. Robert Draper, who reviewed plaintiff's medical records in connection with plaintiff's disability determination, found plaintiff's complaints of pain to be credible, concluding on April 17, 2008, that plaintiff's pain was severe and caused exertional limitations. See id. at 306.

On the basis of this evidence, much of which is detailed in the ALJ's decision, it was not error for the ALJ to give little weight to Dr. Kinnard's May 27, 2009 opinion. Although some of the

evidence in the record supports Dr. Kinnard's opinion, the majority of it - including treatment and examination notes made by Dr. Kinnard while still treating plaintiff in late 2004 and early 2005 - does not. The ALJ was entitled to resolve conflicts in the record, see Rodriquez Pagan, 819 F.2d at 3, and to disbelieve plaintiff's subjective complaints of disabling pain in the face of contrary medical evidence, see Evangelista, 826 F.2d at 141. In this case, the ALJ's resolution of any conflicts in the record was adequately supported by substantial evidence and, accordingly, his step-four finding regarding plaintiff's residual functional capacity was proper and will not be disturbed.

   B.   The Opinion of the Vocational Expert

   Plaintiff also contends that the ALJ erred by not giving adequate weight to the opinion of a vocational expert, Paul R. Blatchford, regarding plaintiff's literacy, education, and overall employability. However, Blatchford's opinion would have been relevant only at step five of the ALJ's sequential evaluation process. See 20 C.F.R. §404.1560(c)(1). Because the ALJ properly never reached that step, he was not required to consider Blatchford's opinion.

IV.  ORDER

   In view of the foregoing, it is hereby ORDERED that:

   1. Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner of Social Security (Docket No. 14) is DENIED.

2. Defendant's Motion to Affirm the Commissioner's Decision (Docket No. 17) is ALLOWED.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE
